All rise. The State of Florida Commission Committee of the Public Works Council statute, Honorable Justice Levy, come forward to preside. Please be seated. Thank you. Will the clerk please call the next case. 216-0840. Good morning, Your Honor. Good morning. May it please the Court, my name is Michael Boulay. I am appellant. This matter comes before you on the application of the equitable principle of quantum numero in connection with the former attorney in a workers' compensation case's request for attorney fees. Certain facts are not contested. The foreman firm, the discharge firm, had the case during a time when the petitioner's claim was undisputed. They were not called upon to perform any substantive work. Ultimately, an independent medical exam came to be that threw everything into contest. And several months later, with no apparent work being done on the case by the foreman firm, Ms. Garcia solicited my services and I took over. Upon having taken over, I invited the foreman firm to please supply me any final materials of any value. None were turned over so we had nothing to use, not even the IME reports. So ultimately we had to subpoena even the IMEs to get those reports, all the medical records. We worked the file out. We ultimately reached a successful resolution for $20,000 and worked out of that sum to resolve all of her various disputed medical bills, of which there were many. And at that point in time, there was a claim made by the foreman firm to resolve their fee issue that I had actually righted with myself under 16AJ, which entitles the arbitrator to make such resolution. Over the course of two hearings, the court demanded nothing of the discharged foreman firm to demonstrate the value of their work, but did repeatedly demand of me that I show my time and demonstrate value. And I attempted several occasions to educate the arbitrator that I was under a fee contract. The principle of quantum heroin is the burden of those requesting fees using these six factors. But it got to the point where the court had to ask me several times. Nonetheless, ultimately, the court issued an order after all that took place, and rather than doing any substantive evaluation of the six factors, she awarded three-quarters, or a portion, if you will, three-quarters of the $4,000 fee to the discharged firm. And one quarter to the arbitrator you're referring to? The arbitrator. Then I went to the commission, and the commission held, if I'm reading this correctly, that the discharged attorney, is it Scholl, is that how you pronounce his name? Was it Scholl? Is that how you say it, Scholl? I got it. Okay. According to the commission, produced a substantive basis for his claim on February 21st, 2014 hearing date, and noted that if Lula had bothered to appear, he would have had the opportunity to review the same. So they have a little different spin than what you're telling us. Did you suggest they had no basis for doing this? The initial list that I was talking about was the violation of the Loggins principle, and that was that the arbitrator did not apply the six principles of Pontot, Meroweth, to calculate the fee award, but rather for my default in demonstrating labors performed by me, in her perception. I certainly don't think supplying the result in this case is a default in effort. She performed it proportionately. So I believe that initially that's the first error, was the method of applying it to Pontot, Meroweth. To your point, Your Honor, let's say we get past that. What is in the record that demonstrates or supports the burden of the requesting attorney to meet those six factors under Pontot, Meroweth, this being an equitable doctrine such as it is? And you are 100% right. To my confoundment, the circuit court focused only on the fact that I was absent at the first of the two hearings. And I do address my absence. I don't think that's material to the case, although you're right, and I even pointed out in my brief they spent six pages on it, the commission too. So I don't quite see the divergence there because while I was in the first hearing, what happened happened. It's a record. The record was made. It's for Your Honor to consider. There was a second hearing, a second hearing that was ostensibly granted me for purposes of substance, and my only mission at that point in time was to investigate the work done by the attorney who's making the claim to check the veracity of these six points under Pontot, Meroweth. Oddly, no real explanation was given. I was denied that. I was denied the ability to cross-examine the attorney who was submitting a timesheet. So moving on from the fact that the court applied the apportionment standard, which in Illinois is not the proper application of Pontot, Meroweth. What evidence is there in the record that there was an apportionment standard applied? The court says she divided the fees. The court says the $4,000, 20 percent of the total settlement offered, $20,000 in attorney fees, portion is divided between Mr. Skoll's firm and it was based on a percentage basis. This is the exact thing that the Morgan's case says you shouldn't do. And to demonstrate further the fact that she applied the apportionment approach, which the apportionment approach does ask the attorney under contract to account for his time and to account for his efforts because now we're not going to look at this as if I'm entitled to the contract amount and the person who is seeking the fee has to demonstrate some value to receive money out of that contract amount while I sit there. The court says so I'll turn it over to you, Mr. Lulay, and ask you why it is you believe you're entitled to the amount that you're requesting and what amount that is. I have asked Mr. Lulay to please put on the record whatever evidence he has establishing his entitlement to apportion of the fees being requested in the settlement contracts. Mr. Lulay, I will ask you to now do that in a third time. Are you now, after that very brief introduction and response, ready to prove evidence to me of what you believe supports your position that you're entitled to attorney fees from the contract that has not been submitted to me and what that amount is? Fourth time, I'm interested in you telling me on the record and providing evidence to me of what it is you believe you are entitled to attorney fees being requested, which is $4,000. In one final remark, before you say that you're done and I want to make sure that you articulate for me everything that you feel you need to establish what apportionment of the fees being requested should be directed to you. Is this the arbitrator you're talking about? Correct. We review the commission's decision, not the arbitrator's decision. Obviously, you're aware of that. I am, and the commission affirmed the arbitrator's decision, and so I did feel that it was vital and that in each instance there's no evidence in the record to support any of the elements of quantum merit. And the affirmation of the inappropriate application of the law is itself an inappropriate application. With regard to your first point, looking at the transcript, at the February 21st, 2014 hearing, according to the transcript, Scholl verbally presented the history of his firm's representation of the claimant in this case and provided an itemized listing of the hours the firm expended on the case, which was accepted into evidence and marked as Foreman Exhibit No. 1. It includes 70 phone calls to the claimant, the adjuster, various doctors, detailing other work on the case. How are you reaching the conclusion no work was done that justified the award? I'm not reaching the conclusion that no work was done. I do have the conclusion that I assert that they weren't called upon to perform any work because it was uncontested. And vis-à-vis the document you're referring to, there was no foundation for that to go into evidence. That was not asserted to be based upon anyone's personal knowledge who was testifying at the time. Did anybody object to it going into evidence? No. I was, according to the arbitrator, because no one is objecting, it is going into evidence. And so it did. So now are we supposed to revisit the propriety of that document going into evidence? No, absolutely. No, I'm saying let's count it in evidence. It is in evidence. I never suggested that the court should be challenged with allowing something in there. I did suggest that just because there is no one there to object, as Justice Hoffman pointed out in one of the arguments I heard this morning, doesn't mean it necessarily has to go in. It is the judicial authority. But it's in. Whether it has to or not, it went into evidence without objection so they can consider it, right? Okay. So let's talk about what they can consider it to be. It is several eight-and-a-half by 11 sheets of paper with no explanation from anybody as to what it accounts for, with no explanation from anybody with any personal knowledge as to what it accounts for. It is several pages of what Mr. Stoll said he wrote out that morning based on looking at the file. There was never any indication that any of the work was actually performed. It was him picking up pieces of paper and saying, if I looked at this, it would take me ten minutes. And it's my submission that if there's going to be an award under an equitable principle of three-quarters of the entire fee, that even if we wanted to fill in all the gaps that there are here, it would not be equitable to award the prior attorney in this instance three-quarters of the entire fee based on the fact that none of the services that were performed were of any benefit to the plaintiff. Well, how would they know that? I guess if you were in the situation that Mr. Stoll was in and you – opposing counsel wasn't there and you had these documents to submit, was there something improper with him doing it? No, I'm not suggesting anything. I'm talking about the body of evidence being absent in this case. We have several eight-and-a-half by 11 sheets of paper where – now, were I to have cross-examined them, what we would have learned is really going to just elucidate what we already know, and that is he said this – he never testified that he performed any of the work. He never testified that his personal knowledge of any of the work was performed. He said, I just looked at the file and I put down what I thought based on what appeared to be in the file. If there was a piece of paper, I put down .1. If there was two pieces of paper, I put down .2. That's all well and good, except that the – one of the key factors of determining the value of someone's work is whether that work was necessary or benefited the client. But it was never contested that it was unnecessary because nobody was there to contest it. So now you're – Of course it was contested. I had – we had a second hearing in which I contested all of the above. I submitted a – I submitted a proposed finding, which is my way to raise these same arguments. All right. So then you had a second hearing. You had your day in court. You presented your evidence, your argument in opposition to his records, right? Absolutely correct. And the commission ruled in his favor, right? Absolutely correct. And as we sit here today, I'm challenging both the manner of application of the principles of quantum merit to this set of facts such as they are. And I'm challenging whether there is actual evidence of any of the six factors here. Your Honor would suggest that, well, there's evidence that somebody did something because we have this sheet of paper that has a list on it. And I respectfully suggest, well, since one of the factors is who did the work and was it necessary and how did it benefit? In talking about the counsel whether it was necessary and whether or not it was going to benefit, I'll read to you from the commission's decision. Mr. Lulay argued extensively that Mr. Scholl is not entitled to be impeached because, according to him, the petitioner's case was undisputed while Mr. Scholl represented the petitioner. And in the meantime, allegations came into dispute occurred while he represented the petitioner. Mr. Lulay provided no evidence of these assertions that argued him to be impeached. What do you have to say to that finding of the commission? The specific assertion that Mr. Scholl did not demonstrate. Did you provide enough evidence of your assertions? It wasn't my burden to do so. My argument was the same as it is here today for the lack of there being evidence to support the burden that was Mr. Scholl's and, ergo, the findings that the court ultimately made, which was that there was a benefit, that the work was done by an attorney who was qualified, submissionally qualified, to charge $250 an hour. That $250 an hour was a reasonable amount to be charged in the community for these types of services. For the lack of that, there can be no finding or award under quantum merit. There's not a singular element of quantum merit that supported any evidence. We have a piece of paper. There's one of the arguments was, again, it was an argument Mr. Scholl never took over. Mr. Scholl never testified. He only had a piece of paper, an unexplained piece of paper. And one of his arguments was that these phone calls or some effort was involved with confluence of TTD checks or something. But there was never any testimony of that. So, again, this, the entire burden of this equitable principle, and I point out equitable principle because while we have a pool of funds, so many times the lower courts are looking at this scenario and going, tell me how much time you put in and give me an hourly rate to apply. And that should not be with regard to what should the petitioner pay for the type of services being requested, and it should not be with regard to what is the pool of funds. But that's, equity demands the exact opposite of that. To under these circumstances, no matter whether Mr. Scholl did decide to put on evidence and give testimony about who did these things. Were they secretaries? Were they paralegals? Were they first-year associates? So you raised these issues at the second hearing? You raised all these concerns and pointed out the deficiencies, perceived deficiencies in Scholl's presentation at the second hearing? No, because the decision had not been made then. What I pointed out then is that I would like to investigate those elements by cross-examining Mr. Scholl. And I was told, no, you cannot, and I said, well, Your Honor, you had just granted my request to have a substantive hearing on this matter. Why can't I? She said, well, we're not going to do that. And I said, well, I would like, and this would have been beneficial for Your Honor at this point, to have a show of proof of what I expected to elicit. No, I'm not going to listen to you hypothesizing about what Mr. Scholl would have said. There was nowhere for me to go. So having where I am today, though, is in the same place as no award should have been given, and that is with a contract right to 20 percent of the fee, with an attorney who was discharged requesting a portion of that based on quantum aramid to which six principles have to be applied, but to which the bucket of evidence is absent any of this. It was not my position to be cajoling everybody at the time, you know, we need to fill this hole, we need to fill that hole. If I had never even had the second hearing, if just, if I had never even explained my absence at the second hearing and pursued, at the first hearing and pursued the second hearing or pursued any of this, there was nothing after that. You can't just hand a court an 8.5 by 11 sheet of paper with times on it and expect the court to know what that is and who did it. Because again, we've got a petitioner here, and while it's arguably the petitioner's money, it's a fiction we're entertaining. Yes, it doesn't cost the petitioner any more money no matter how much we give Mr. Shull. If Mr. Shull had been sworn and testified, would that have been sufficient? No, because okay, now we've got at least somebody who's saying, I'm prepared to give testimony. I'm saying if he was sworn and did testify, said exactly what he actually did say at the hearing. Are you saying that that would have made a difference? No, there wasn't anything said even in argument at the hearing that explained the nature of the case. The question is, trying to get at what you're saying, the proper procedural requirements to support this award, is that there should be sworn testimony by Mr. Shull outlining everything on that proposed document, or that document, those 7 sheets of paper. If that document is to have any value towards answering the questions that are the six principles of quantum error, there would have to be more than just the document. There would have to be somebody explaining, say for example, I spent these 10 minutes doing what and why, and how did it help? And do you have a case law that says that? You do, okay. At the February 21, 2014 hearing, didn't Mr. Shull present the history of the firm's representation of the client? No. The only thing, the records are pretty brief here. I do know them rather well. My understanding is that Mr. Shull said that we, the firm, represented this person for this period of time, and I went through the file, and I looked at what I, I mean we, did, and I wrote down what I, I mean we, you know, probably did. And I had it here, and I want $250 an hour for all of it. And that went in. Then we had the second hearing, at which point in time, a second opportunity to put forth any additional evidence that they would propose to do is heard. It's very clear at that hearing that the judge is agitated with me. I make a request upon being granted this hearing. I don't know what the point of this granting the hearing, but I want to seek testimony about these vital things. Okay. I'm still not sure about what you're saying. Are you saying at the February 21 hearing, Mr. Shull didn't say anything that would have addressed any of the quantum heroin factors? He didn't provide verbally any of the information that the court could rely on, and simply handed over this piece of paper that you're talking about, the exhibit, and left it to the arbitrator? Yes. Okay. Even though you weren't there to see this, right? I read the transcript. Okay. Okay. Oh, wait. Oh, no. We've got two very brief transcripts here, and I've cited, I've cited exactly what he said in connection with the sheets of paper. I have cited what the court said in connection with granting me and taking thus away, and I'm asking the panel to look in the body of evidence and see if I'm wrong. So far as I know, there's zero sworn testimony. There's certainly some rhetoric that, honestly, in none of those hearings did even Mr. Shull establish what role he was acting. Was he acting as an attorney for the law firm and going to advocate secondhand for a sheet of paper? I don't know. I did get the impression he drafted the sheet of paper. I just want to say, maybe I'm missing your, I'll concede your point here. I'm looking at everything here in your argument. The transcript says, at the February 21st hearing, Shull verbally presented, admittedly not sworn testimony, verbally presented the history of his firm's representation of the claimant, provided an itemized listing of the hours the firm expended on the case, Exhibit 1, 70 phone calls, adjusters, doctors. So you're saying, under the law, that is, as a matter of law, has to be declared insufficient. That could never stand, what he did. No, I'm saying that that's a characterization that is lacking some minutiae, and the minutiae is as follows. He presented a sheet of paper. He never said his firm spent his time. He said that he did some approximations based on looking at it. He doesn't know that his firm spent any of that time. There's been no personal knowledge, given that any of the amounts on that timesheet were actually expended by anyone, one of the key elements of determining value. So the court, you're saying, should have said, bring in all these other people, bring in your firm, bring in the doctors, and really verify what you're saying. That has to be your argument here. Well, there are two ways to prove it. In reply, hold that thought while we're trying to reply. Great. Counsel, you may respond. Okay, we're awake. Good evening, please, the court. My name is Adam Scholl. I represent the discharged attorney law firm of Donald Foreman and Associates. It's my contention that the Illinois Workers' Compensation Commission and the circuit court were correct in their division of attorney's fees in this matter, and I'm seeking an affirmation of the circuit court's decision. Well, can you tell us, first of all, what you did? Because obviously that's the bone of contention. Counsel makes his point clear, and that's been decided by us, that whatever you did was insufficient to substantiate your time and justify your attorney's fees. Yes, sir. So how do you respond to that? My response is as follows, Your Honor. The nature of a workers' compensation practice is based on a contingent fee. We don't work on an hourly fee. We don't have the ability to bill every phone call by the five-minute or ten-minute increments. Rather, what we do is we represent our clients with the intention of obtaining a 20% legal fee when it's all said and done. With that being said, when there is a situation like this, when a firm like mine is discharged, all we can do at that point is to try to reconstruct the hours that we may have put in on this case. Let's put it more basically. What did you present, either verbally or in written form, that addressed the fundamental factors upon which the fees could be fixed? Yes, sir. At that time, I was given an opportunity at the February 21st hearing to be able to express to the arbitrator what our law firm did. I expressed that we represented the petitioner for approximately a two-and-a-half-year period. I expressed to her that during that time period, we were, I believe, instrumental in making sure that the petitioner's benefits continued on a regular basis. At this point, you're verbally saying this. I verbally said that. And in support, I provided a written document reflecting our hours. And the way that document was constructed was based on, again, and I was getting to my earlier statement, all we can do to reconstruct is we do keep a log in our computer system of the various activities that we perform. Now, is this all before the arbitrator, or is this you're just telling us for background? I told this to the arbitrator. Okay. All we want to hear is what you told the arbitrator. I told this to the arbitrator, and at that time, I even told the arbitrator, I have the notes in front of me of which she said, you're not going to introduce that. And I said, no, I'm not going to introduce it because it's technically considered attorney-client privilege and work product. So I said I would not introduce it, but I would just be able to summarize within my timesheet what I constructed as the hours that we did. Now, again, those notes that I have in my computer are not necessary.  may not be reflective of all the activity we've done, but I can only put down the time that I can substantiate based on those notes that I have before me. And Mr. Lulay indicated that in his brief, it set forth the entirety of your comments made verbally, and I'm just trying to find those here, but can you direct us either in brief or? I'm sorry. I think he's referencing the pronoun we as opposed to I. Is that what you're referencing? I'm talking about the February 21st, 2014 hearing, what you verbally conveyed to the arbitrator that would provide the information relative to quantum merit factors. I believe that. If it did, if it was. I believe my verbal testimony was more reflective of an overall presentation of what we did, pointing with then directing the arbitrator to the timesheet that I presented into evidence, evidencing what we believe that we did that was beneficial to the petitioner in order to assist her in obtaining the benefits that she's entitled to under the Illinois Workers' Compensation Act. So you did submit as evidence. Were you sworn? I'm not sworn in, Your Honor, but I know that seems to be an issue with Mr. Lulay's term, but I am an officer of the court, and I do understand under the professional rules of responsibility. Well, in circuit courts, you have fee hearings that are somewhat a little more structured. So let's, we're trying to. I don't, Your Honor, I was never asked to be sworn in, so I guess that's the answer. That's not my question. You did then submit timesheets into evidence? Yes. And they were marked as such, and they're in the record? Yes, sir. I believe it's inserted form in deposition exhibit one. So you testified about those timesheets? Yes, sir. Okay. So that was the evidence the arbitrator had? Yes, sir. Okay. And then the second hearing, and that was it because you and the employer showed up, right, at the first hearing? Yes, sir. And so, rather than waste time, she took your testimony? She took my testimony at that time. Non-sworn testimony, but introduced, took into, as evidence, an exhibit of a timesheet? That is correct, and absent any objection. And then rescheduled for a later date, whereupon Mr. Lulay would be noticed to appear, correct? Well, if I may correct you, it was a subsequent motion that was filed by the Lulay law firm, seeking a motion to either vacate the February 21st hearing or asking the alternative to augment the record. And that is why we appeared a second time, at which time that hearing was essentially Mr. Lulay's form, in order to present whatever he did to substantiate the work that he performed that was asked by the arbitrator. I was not involved. She never rendered a decision at the end of the first hearing, correct? That is correct. Okay, and so it was at the end of the second hearing a decision was rendered? Yes, sir. And was there any sworn testimony at that point? No, sir. Any exhibits entered? Mr. Lulay was asked many times to enter some exhibits. He did enter various exhibits into evidence on his part, but none of them, from my interpretation, necessarily reflected the work that he performed. It was more in support of the arguments that he was presenting on that day. Now, Your Honor, I think counsel has talked about this issue of quantum merit, and I think that quantum merit can be interpreted one of two ways in this particular case, and that is you look at what the discharged attorney did, but there's also an exception to the rule, and that exception is that I pointed out in my brief in the Rhodes case, the Wagner case, and the Del Paz case. And that is a situation where if it is established that the successor attorney, or I should say the discharged attorney, did much of the work, and the successor attorney did nothing but merely settle the case, which I believe is exactly what happened here, then the tables somewhat get turned. I think Mr. Lulay was given an opportunity by the arbitrator multiple times to say, that said he did nothing more than settle the case. Now, if you look at the time frame here, and I want to also correct an inaccuracy that Mr. Lulay expressed within his brief as well in his testimony today, or his presentation today, our firm represented the petitioner, in this case Ms. Garcia, up until December 12th, December 18th of 2012. Our termination was based on the receipt of a letter from the respondent and an IME report that said that she reached a mind and was no longer entitled to benefits. Now this IME report was dated October, but we did not receive it until December, on or about December 12th or so. So it's inaccurate for him to say that we had two and a half months of doing nothing, knowing that this case was disputed by an IME that was done in October, because we didn't know in October. There's no evidence in the record that Mr. Lulay can state that we knew in October that this case was disputed, and in fact benefits were being received up until the point of around December 12th. We were fired December 18th on this case. Six days later, now as Mr. Lulay says in his brief, he settles the case in spring of 2013. We're talking about three, four months later, at which he only said he substituted his legal counsel on the record in January of 2013. So he becomes attorney of record in January of 2013. He settles the case in spring of 2013. I don't know what he did more than just settle this case for him to be able to make the argument he has. If you reference the Rhodes case, if you reference the Wagner case and the Delacoste case, the court has the ability to look at what the successor attorney actually did. And the arbitrator, during the course of the hearing, asked Mr. Lulay during the hearing four separate times, what did you do? What offer of proof do you have to show what you did here? And Mr. Lulay obstinately continued and said, I don't have to. I'm the contract attorney. Quantum merit is not upon me. It's upon Mr. Schultz. And what do you say to that argument? I say he's incorrect. I think this is a perfect example of why the Rhodes, the Wagner, and the Delaposte case. Well, Rhodes stands more for the proposition of introducing the exception that came from the California case. It's the Wagner and Delaposte case that actually applies that exception. I believe this exception is particularly to this fax. And that is counsel didn't show nothing to the Illinois Workers' Compensation Commission that he did nothing more than settle this case. He argued before we worked on the bills. We negotiated bills on settlement. That's not in the record. There's nothing in here in the testimony that he presented when he had a chance to augment the proofs, that they negotiated the bills down.  That's nothing in here. So what you're saying is that really your position is that both attorneys, initial and successor attorney, really are in a quantum merit action. And that's the law. Actually, I'm not saying that, sir. What are you saying? What I am saying is if you apply the exception. Well, that exception swallows the real, doesn't it? Well, if you apply the exception, I become the contract attorney. He becomes the attorney subject to quantum merit. If, on the other hand, you turn it around and say, no, I disagree with that, and you say that my firm has to make a proof of quantum merit, then I think we did it. I think we established exactly what we were supposed to have done. We presented ours. We presented testimony. I believe that the commission has the deference and the knowledge of the firms and the attorneys that present to them to know whether or not they are skilled and have the ability to do what they're doing and practicing what they're claiming. So if we want clarity in this law to avoid these things, we should just say everything should be quantum merit, regardless of the status of a contract, regardless of the status of successor or predecessor attorneys, and be done with it. I don't know if I would agree with that conclusion, Your Honor. Why? Because I think that somebody is the contract attorney. Yeah, but when it's disputed, throw it out. That's a good point. We've got exceptions. We've got all this other nonsense. Why don't we just go back to quantum merit? That's a conclusion that this court can make, but I don't necessarily agree. So they have clarity of the law, isn't it? I don't know. I would agree. They actually put the arbitrators and commissions into a known position to decide these things. I'm not disagreeing with the logic that you're stating, but I don't know if that's supported by the law or any case law. What would we do if we set a pox on both your houses? I'm sorry, sir. What should we do if we set a pox on both your houses? You didn't prove you're entitled to do a fee because you never introduced evidence as to who actually performed the work, what their standing was, and then turn it around and say Mr. Lallet failed to sustain his burden of establishing that he did something more than settle a case. So what should we do with the case now? Vacate it and send it back and let you two fight it out again? I hope that doesn't happen again. To be quite honest, the purposes of this particular case, the time and hours expended already just fighting this case is beyond what my potential fee on this case is. But nonetheless, you have the ability to make that decision. But I do believe that we presented enough evidence here to establish our entitlement to our fee. I believe that the manifest way of evidence has not been contradicted here by Mr. Lallet's firm. And as such, I believe that the lower court should be affirmed. The lower court should be affirmed as well as the commission in this case. Thank you, counsel. Thank you, sir. Counsel, you may reply. If you'll indulge me for a moment. The cleanest way to look at this is the way the quantum narrowing principle is developed. And that's the equitable principle that says you and I have an agreement for 20 percent. But we don't have an agreement for what happens if I terminate that agreement. So what we should do is evaluate what you did for me. And we should use equitable principles to do that. And there are six that kind of guide us. And we'll use that to decide what I should pay you. So if I'm Maria Garcia, is the work that Mr. Lallet did for me worth 25 percent of the entire fee? And is the work that the Foreman firm did for me worth 75 percent of the fee? Let's go through these six elements. Was there some benefit that they afforded me during the process of their representation? It is not disputed that the case was undisputed. It is not disputed that the respondent's attorney testified he performed no services throughout the case. And he testified or said off record that there were never any disputes. Then we can ask the question, what type of time was put in by the Foreman firm? Well, we know somebody who represents the Foreman firm, as you said here today, himself looked in there and saw what he looked like to the time of him. But he doesn't have personal knowledge that any of the time that he gave was actually spent. He said, I can at least give you a list of what I think maybe was done. He did not offer into evidence time slips or sheets, just to be clear. He offered into evidence his estimate of what those would look like if they were kept. And he did not offer any material to me when I took over the case that I could use to her benefit, that we could say had quantum merit value. And he didn't offer any file materials into evidence so that the court could even examine any single one of them. Counsel, we heard this argument before. What do you say to my question if we say a pot's on both your houses? He didn't meet his burden, you didn't meet yours. You should send it back and let you fight it out again. Excellent point. Thank you. Because I did forget about that. The Wagner and the Dale Potts principle that he's suggesting that invokes your point is only applicable, it is the exception because it's only applicable where the discharged firm has proved that they were instrumental or substantially brought about the result of the contract's subsequent attorney. There was never, ever even the assertion here that that occurred. So those cases are not in play. And certainly you would be at liberty to consider changing the law, but ever since Lyons, which says we're not going to look at what you each did, as some states do, and we're not going to then apportion it based on that, the courts have been very clear that it should be the burden of the requesting attorney to prove all six elements of quantum merit and then they would receive a fee out of that. Because of the equitable principle, there is also the other side of it. But wait a second. You can't just take every dollar. And we can't just take every dollar that they claim, which they just put $250. We don't even know who did the work. Counsel, your argument is a simple argument. He didn't meet his burden of proof. All the rest of this stuff is just, it is what it is. I was taken in those directions, but everyone else... I mean, that's it. That's all your argument is. He didn't meet his burden of proof. I had no burden of proof. That is my position. That's your total position. Okay. Thank you. Thank you, Counsel Bowles, for your arguments in this matter. We'll take our advisement. A written disposition shall issue.